IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOSEPH PITTS, #A0259019, | ) | CIV. NO. 18-00470 LEK-RT |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING FIRST |
| | ) | AMENDED COMPLAINT WITH |
| vs. | ) | LEAVE TO AMEND |
| | ) | |
| DAVID IGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND

Before the court is pro se Plaintiff Joseph Pitts' first amended Complaint

("FAC") brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and Hawaii

Revised Statutes §§ 662-2, 663-31 & 96-18.  *See* FAC, ECF No. 12.  Pitts is

incarcerated at the Halawa Correctional Facility ("HCF").  He alleges that prison

officials violated his constitutional rights when he was incarcerated at the Oahu

Community Correctional Center ("OCCC") for six months between approximately

May and December 2016.

Pitts names the State of Hawaii and Governor David Ige; Department of

Public Safety ("DPS") Director Nolan Espinda, Deputy Director of Corrections

Jodie Maesaka-Hirata, and Division Administrator Cathy Ross; OCCC Chief of

Security Denise Johnston, Adult Corrections Officers ("ACOs") Captain Evans,

Sgt. Blue, ACO Koma, and ACO Laredo; Case Managers Andrea Barayuga and Joleen; Food Services and Environmental Health and Safety Director and staff Jane/John Doe 1-10, Medical and Mental Health staff Jane/John Doe 1-10; Librarian Caroline Gunn; Acting Wardens Michael J. Hoffman and Francis Sequirra;[1] and Brian Watanabe as Defendants (collectively, "Defendants").

Pitts seeks monetary damages and injunctive orders ensuring that, if he is ever rehoused at OCCC, he will not experience the conditions that he challenges here, and that he will be housed in a "Work Module with no roaches/ [and] afforded employment." FAC, ECF No. 12, PageID #85.

For the following reasons, the FAC is DISMISSED with leave to amend as limited below, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

## I. <u>STATUTORY SCREENING</u>

The court conducts a pre-Answer screening of all prisoners' pleadings. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir.

---

[1] Pitts spells this "Sequirra," "Sequiera," and "Sequierra." The Court uses "Sequeira," as seen in prior cases, news media, and DPS records. *See* https://www.staradvertiser.com/2015/01/28.

2010).

Screening under §§ 1915(e)(2) and 1915A(b) involves the same standard of review as that under Federal Rule of Civil Procedure 12(b)(6). *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me accusation" falls short of meeting this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Rule 12 is read in conjunction with Rule 8(a)(2) when screening a complaint; Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must accept the complaint's plausible allegations as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the pleading in the light

most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *Byrd v. Maricopa Cty. Bd. of Supervisors*, 845 F.3d 919, 922 (9th Cir. 2017). The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint, *Lopez*, 203 F.3d at 1130, but if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. <u>BACKGROUND</u>[2]

### A.   Procedural History

Pitts commenced this suit on behalf of himself, two named OCCC prisoners, and all present and future OCCC prisoners, on November 29, 2018, when his state-court attorney filed the Complaint with the court. *See* ECF No. 1. Pitts says that he was housed at OCCC for six months "between May 2016 to approximately December 2016," while he awaited re-sentencing and a decision on his motion for

---

[2] Pitts's plausible facts are accepted as true and construed in his favor on screening. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

a new trial in *State v. Pitts*, Cr. No. 09-1-00097 (Haw. 1st Cir.).[3] *Id.*, at PageID #2.

He alleged that overcrowding at OCCC led to inhumane conditions of

confinement, including tiny, filthy, vermin-infested cells, inadequate food,

deficient medical and mental health care, increased violence, limited recreation

and showers, and inmates sleeping on the floor. He also complained that case

manager Barayuga often denied inmates attorney calls and visits during

lockdowns, which prevented him from "constant contact" with his defense

attorneys. *Id.*, at PageID #7. Pitts suggested this resulted in the denial of his post-

trial motion and the re-imposition of a life term.

On April 1, 2019, the Court screened the Complaint and dismissed Pitts'

claims for prospective injunctive relief with prejudice, because Pitts was no longer

incarcerated at OCCC when he filed the Complaint. *See* Order, ECF No. 8, at

PageID #54 ("April 1, 2019 Order"). The Court also dismissed damages claims

against official capacity Defendants under the Eleventh Amendment without leave

to amend, and the remaining claims against individual Defendants with leave to

amend. The April 1, 2019 Order notified Pitts that, if he filed an amended

---

[3] The Court therefore takes judicial notice of Cr. No. 09-1-00097. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (stating court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (quotation omitted); *see* https://jimspss1.courts.state.hi.us. (1PC091000097).

pleading, he "MAY NOT expand his claims beyond those already alleged or add new claims or Defendants," without explaining how new claims or Defendants related to his original claims. *Id.*, at PageID #53.

On June 4, 2019, Pitts filed the FAC and a Motion for Reconsideration of the dismissal with prejudice of claims for injunctive relief. *See* Mot., ECF No. 11; FAC, ECF No. 12. Pitts argued that, if his pending direct appeal in Cr. No. 09-1-00097 is successful, he could be transferred to OCCC and might again be subjected to the conditions about which he complains here.

On June 7, 2019, the Court denied Pitts' Motion for Reconsideration, holding that the possibility that he will be transferred to OCCC and subjected to the conditions he challenges is too speculative to reinstate his claims for injunctive relief. ECF No. 13 ("June 7, 2019 Order"). Thus, Pitts' claims for prospective injunctive relief as alleged against the State and damages claims alleged against official capacity Defendants remain DISMISSED without leave to amend.

**B.      Allegations in the FAC**

As noted, Pitts says that he was housed at OCCC for approximately six months between May and "on or about December 2016," while he awaited

resentencing and a decision on his motion for a new trial in Cr. No. 09-1-00097.[4]

FAC, ECF No. 12, PageID #67-#70.  He alleges that his transfer to OCCC was

pursuant to DPS policy and state laws that designate OCCC as the facility where

pretrial and unsentenced inmates are held.  Pitts broadly asserts that Defendants

Governor Ige, Espinda, Maesaka-Hirata, Hoffman, Sequeira, Ross, Johnston,

Evans, and possibly others generally knew that OCCC was overcrowded upon

their appointment to office, based on their public statements seeking prison

funding and announcing a new site to expand OCCC (yet failing to begin

construction), past civil cases, and letters and complaints that he and others sent to

them.  He suggests that Defendants violated the 1985 consent decree in *Spear v.

Waihee*, Civ. No. 84-001104 (D. Haw. 1985), which governed overcrowding and

the provision of medical and mental health care at OCCC and the Hawaii

Women's Correctional Facility in these facilities; he attaches a copy of that decree

to the FAC.

 The FAC is primarily focused on Pitts' claims that OCCC was

unconstitutionally overcrowded, but it substantially expands his original claims

beyond overcrowding and interference with attorney contacts.  Pitts now alleges

---

[4] Pitts was resentenced and his motion for a new trial was denied on **November 9, 2016**; thus, he was a *convicted* inmate on that date.

that Defendants (1) knowingly subjected him to constitutionally overcrowded conditions of confinement at OCCC (Counts I, II, and V); (2) promulgated an illegal mail policy (Counts I, VI); (3) discriminated against him on the basis of race (Counts III, IV); (4) denied him access to the courts and to the prison grievance process (Counts I, II, III); (5) limited attorney contacts (Counts I, II, III); and (6) retaliated against him for filing grievances (Counts I, II, III).

## III. <u>DISCUSSION</u>

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

A plaintiff must also allege that he suffered a specific injury as a result of a particular defendant's conduct and allege an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

**A.     The FAC Fails to Comply With Rule 8**

Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that [e]ach allegation . . . be simple, concise, and direct." Fed R. Civ. P. 8(a)(2), (d)(1).  To state a plausible claim, a plaintiff must allege a factual and legal basis for each claim, so that each defendant is provided fair notice of what each claim is and the grounds upon which it rests, sufficient to frame a responsive pleading.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Twombly*, 550 U.S. at 562-563, 556-57. The court may dismiss a complaint for violation of Rule 8 if a defendant would have difficulty responding to its claims, *see Cafasso, U.S. ex rel v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011), even if the complaint is not "wholly without merit," *McHenry v. Renee*, 84 F.3d 1172, 1179 (9th Cir. 1996).

Accordingly, even claims that are not subject to dismissal under Rule 12(b)(6) may still be dismissed for violating Rule 8(a).  *McHenry*, 84 F.3d at 1179.  That is, even if the factual elements of a cause of action are present in a complaint, but are scattered throughout the complaint and not organized into any semblance of a "short and plain statement of the claim," the pleading may be dismissed for failure to satisfy Rule 8(a).  *Sparling v. Hoffman Constr. Co.*, 864

F.2d 635, 640 (9th Cir. 1988).

The FAC is a perfect example of a pleading that does not comply with Rule 8. It is replete with irrelevant commentary and conclusions of law. Pitts' statement of facts is scattered throughout the FAC and its claims are repeated within several Counts, making it extremely difficult to ascertain what claim is asserted, when the events at issue regarding that claim occurred, which Defendants are personally connected to each allegation, and whether the allegations relate to Pitts' personal experience, or to other OCCC inmates' experiences. Pitts rarely provides a specific date when an incident occurred, or identifies a specific Defendant or Defendants who were allegedly involved in any specific claim.[5] Rather, his claims are mostly alleged as occurring at some unidentified date during the six months that he spent at OCCC, and, while Defendants are named at the top of each Count, Pitts generally refers to them within any count, if at all, as having been aware of his claims via grievances or complaints. This format does not enable a prompt and clear understanding of Pitts' allegations.

_____

[5] Pitts does specifically identify: (1) the OCCC kitchen supervisor and staff as providing inadequate food, on moldy trays, and then retaliating against Pitts (and others) after he complained; (2) Gunn for refusing to copy a letter on June 21, 2016; (3) Barayuga for limiting legal calls during lockdowns; and (4) Joleen for denying him a job based on his race. *See* FAC, ECF No. 12, at PageID #74, #76, #78-79 (Counts II, III, IV). These claims are addressed below.

Pitts sets forth six causes of action, but he alleges numerous claims within each Count. For example, Pitts' deliberate indifference claims, meant to support his allegation that OCCC is unconstitutionally overcrowded, are randomly spread throughout the FAC's four-page, single-spaced introduction, and within Counts I, II, and V. Interspersed with his deliberate indifference claims are other claims that are unrelated to and provide no support for his overcrowding claims.

The form complaint directs Pitts to state only one issue per count. Instead, Pitts alleges that Count I involves: deliberate indifference and threats to his safety, interference with mail, racial discrimination, denial of access to the courts and attorneys, denial of due process, racial discrimination, and violations of state law. *See* FAC, ECF No. 12, at PageID #70. Similarly, Count II allegedly involves: "Denial of Due process/(violation-denial) of state created liberty interests, state law COR.1F.02 and all applicable policies and procedures/ cruel and unusual punishment/ denial of food/ denial of access to courts/ deliberate indifference/ retaliation/ threat to safety and health/ violations of duties under state law/ negligence/ failure to adequately train/ DPS Policy 493.06.16." *Id.*, at PageID #74. Pitts does not support or even address each of these allegations within Count II, nor should he. Pitts continues this confusing, hyperbolic format throughout the FAC, and within each count, although his allegations in Counts III, IV, and VI are

somewhat more focused.

The FAC forces the Court to cross-reference each sentence and each Count, and even refer to the original Complaint, to discern what particular claim is being alleged against whom. *See McHenry*, 84 F.3d at 1177 (affirming dismissal of a complaint where the district court was "literally guessing as to what facts support the legal claims being asserted against certain defendants"). And even after this painstaking exercise, it is still largely unclear what happened, when it happened, and what any Defendant's personal action or inaction was that violated Pitts' rights. It is not the Court's responsibility to expend its time "preparing the 'short and plain statement' which Rule 8 obligated [Pitts] to submit," so that Defendants can comprehend the FAC's claims. *Id.* at 1180. Nor should the Court or Defendants be required to prepare an outline of a pleading simply "to determine who is being sued for what." *Id.* at 1179.

In short, the FAC is disjointed, confusing, and extremely difficult for the Court or Defendants to understand. Its allegations are neither short nor plain, nor do they give Defendants fair notice of Pitts claims. The FAC is therefore DISMISSED for failure to comply with Rule 8. Fed. R. Civ. P. 8(a)(2).

Because there are several other deficiencies in Pitts' claims that he must consider and cure before filing any amended pleading, Pitts is granted leave to

amend as specifically limited below.

## B.     New or Unrelated Claims

The April 1, 2019 Order warned Pitts that he may not expand his claims or allege new claims in the FAC without a clear explanation of how any new claims or defendants relate to his original claims. This restriction is grounded in Rules 18 and 20 of the Federal Rules of Civil Procedure. Rule 18 allows a plaintiff to join as many claims as he has against an opposing party in one action. Fed. R. Civ. P. 18(a). But parties may be joined as defendants in one action only "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Unrelated claims against different defendants must be brought in separate lawsuits. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350-51 (9th Cir. 1997); *Jossy v. State*, Civ. No. 19-00055 LEK-RT (D. Haw. May 29, 2019); *Kealoha v. Espinda*, 2017 WL 741570, at *4 (D. Haw. Feb. 24, 2017). This rule is particularly important in pro se prisoner suits, because it prevents the confusion inherent in such suits, ensures that prisoners pay the

required filing fees for each separate lawsuit asserted, and prevents prisoners from circumventing the three-strikes rule set forth under the Prison Litigation Reform Act ("PLRA"). *See George*, 507 F.3d at 607; 28 U.S.C. § 1915(g). The court may sever misjoined parties as long as no substantial right is prejudiced by severance. Fed. R. Civ. P. 21, *Coughlin*, 130 F.3d at 1350; *Evans v. Deacon*, 2016 WL 591758, at *6 (D. Or. Feb. 12, 2016).

### 1. *Discrimination*

In Count IV, Pitts asserts a completely new claim alleging that newly-named Defendants Joleen and John/Jane Does 1-10 violated his right to equal protection "multiple times," after Joleen allegedly refused to hire him to work in the kitchen "because of his skin color." FAC, ECF No. 12, PageID #78-79. Pitts says that Joleen "always preferenced and hired Polynesian prisoners." *Id.*, PageID #79. This claim does not arise out of the same transaction, occurrence, or series of transactions or occurrences alleged in the original Complaint, has no apparent connection to overcrowding at OCCC, or to the alleged limitation on contact with attorneys during lockdowns (or any alleged denial of access to the courts). Pitts also fails to show any conduct that John/Jane Does 1-10 did or failed to do that discriminated against him on the basis of his race or provide even approximate dates when this alleged claim occurred.

Allowing this claim to proceed herein is not warranted under Rules 18 or 20. Claims in Count IV as alleged against Joleen and Does 1-10 are SEVERED from this action and DISMISSED without prejudice to Pitts raising them in a separate suit, presuming that he explains when this occurred and what Does 1-10 each did or failed to do to violate his rights.

### 2. *Mail Interference*

Pitts vaguely alleged in the original Complaint that mail was delivered untimely at OCCC because there were insufficient mail clerks. Compl., ECF No. 1, PageID #7. Pitts failed to explain how untimely mail delivery related to allegedly unconstitutionally inhumane and overcrowded conditions of confinement at OCCC, or to allege any supporting facts regarding this claim. Pitts now reasserts this claim as a challenge to DPS Mail Policy COR.15.02, which governs the handling of inmate correspondence in DPS facilities. *See* FAC, ECF No. 12, PageID #72 (Count I); PageID #81 (Count VI). Pitts complains that COR.15.02 cites no legal authorities, discriminates against indigent prisoners, and violates federal and state law by requiring letters to the State Ombudsman, American Civil Liberties Union, Department of Justice, and others be opened for inspection. This claim, as originally alleged or as expanded in the FAC, has no clear relation to Pitts' original claim that OCCC is unconstitutionally

15

overcrowded, does not comply with Rules 18 or 20, and disregards the Court's explicit warning about alleging new or unrelated claims in an amended pleading.

More importantly, the Court takes judicial notice, *see supra*, n.3, that Pitts raised this *identical* claim in *Pitts v. Espinda*, Civ. No. 17-00137 JMS-KJM (D. Haw.), which is currently stayed pending settlement negotiations. In Civ. No. 17-00137, Pitts explicitly challenged COR.15.02 on the same bases as in the FAC, and alleged interference with his mail before, during, and after he was held at OCCC. *See id.*, ECF No. 30, at PageID #166. Pitts also sought relief regarding COR.15.02 *while* he was housed at OCCC, in *Pitts v. Espinda*, Civ. No. 15-00483 JMS-KJM (D. Haw.), and after he returned to HCF. *See id.*, Mots., ECF Nos. 40 (challenging COR.15.02 as implemented at OCCC in August and September 2016); 71 (challenging policy after his return to HCF in **November 2016**).[6] Pitts apparently seeks an alternate avenue for relief on this claim if he is unsuccessful in Civ. No. 17-00137.[7]

---

[6] Pitts' motion also calls into question his claim that he remained at OCCC until December 2016. *See* Civ. No. 15-00483, Mot., ECF No. 71 (stating, "Have only been scheduled for law library nine hours **since returning to HCF on November 7 or 14th**, 2016.") (emphasis added).

[7] This claim was dismissed in part as unexhausted and for failure to state a claim, although his claim regarding interference with a letter to the Ombudsman in July 2016 (while he was housed at OCCC), remains at issue. *See* Civ. No. 17-00137, Ords, ECF Nos. 18 & 238. Pitts may still win relief on the entire claim through settlement or on appeal, however. If not, this claim would likely be barred from relitigation. *See Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204,

(continued...)

Pitts may not litigate the same claim in concurrent, successively filed civil actions. *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995); *see also Denton v. Hernandez*, 504 U.S. 25, 30 (1992) (noting, "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or *repetitive* lawsuits") (quotation omitted; emphasis added); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (stating that duplicative, repetitious litigation of virtually identical causes of action is malicious under § 1915); *Hammler v. Hough*, 2019 WL 2249973, at *1 (S.D. Cal. May 24, 2019).

Pitts' claims challenging DPS Mail Policy COR.15.02 are DISMISSED with prejudice as duplicative of claims raised in Civ. No. 17-00137, and as unrelated to his other claim or claims in this action.

### 3. *Denial of Access to the Court*

Pitts alleges that Defendants denied him access to the court when (a) he was restricted to filing one grievance per week from July to September 2016, because this allegedly prevented exhaustion of his claims; (b) Gunn refused to make copies of a June 21, 2016 letter intended to alert Espinda, the federal court, Johnston, and

----

[7](...continued)
1212 (9th Cir. 2010) (discussing claim preclusion's bar to raising same claim or claims that could have been raised in earlier suit).

the OCCC warden of overcrowding and misuse of funds at OCCC; and (c) Barayuga limited contacts with his defense attorneys during lockdowns at OCCC. *See* FAC, ECF No. 12, PageID #70-77 (Counts I, II, and III).

Under the First and Fourteenth Amendments, state prisoners have a right of meaningful access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). There are two types of access-to-the-courts claims: "those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds*, *Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). In either situation, a prisoner must show an actual injury resulting from a denial of access to the courts to allege a colorable constitutional violation. *Lewis*, 518 U.S. at 349. An actual injury consists of some specific instance in which an inmate was actually denied meaningful access to the courts. *Id.* at 350-55.

To establish an actual injury, a plaintiff must show "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *Christopher v. Harbury*, 536 U.S. 403, 415, (2002); *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011). The right of access to the courts is limited to non-frivolous direct

criminal appeals, habeas corpus proceedings, and § 1983 cases. *See Lewis*, 518
U.S. at 353 n.3, 354-55. "Failure to show that a 'nonfrivolous legal claim has
been frustrated' is fatal to [an access to courts] claim." *Alvarez v. Hill*, 518 F.3d
1152, 1155 n.1 (9th Cir. 2008) (quoting *Lewis*, 518 U.S. at 353 & n.4). Finally, an
action impinging on an inmate's right of access to the courts is valid if it is
reasonably related to legitimate penological interests. *Lewis*, 518 U.S. at 361-62
(citing *Turner v. Safley*, 482 U.S. 78 (1987)).

### a. *Grievance Restrictions*

First, Pitts did not allege this claim in the original Complaint and it has no
apparent connection to overcrowding leading to inhumane conditions of
confinement at OCCC (or to an alleged limitation on contact with attorneys).
Rather, this limitation was allegedly imposed because Pitts was filing numerous
grievances daily, suggesting that he was impeding the grievance review process at
OCCC. Pitts does not specifically identify which Defendant or Defendants
restricted his grievances. This claim is subject to dismissal under Fed. R. Civ. P.
18(a).

Second, Pitts has no constitutional right to *any* grievance process, or to the
proper processing of grievances or appeals. *See Ramirez v. Galaza*, 334 F.3d 850,
860 (9th Cir. 2003) (stating prisoners have no "separate constitutional entitlement

to a specific prison grievance procedure") (citation omitted); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding no due process violation based on defendants' failure to properly process grievances); *see also Todd v. Cal. Dep't of Corr. and Rehab.*, 615 F. App'x 415, 415 (9th Cir. 2015) (affirming dismissal of claim based on improper "processing and handling of [. . .] prison grievances," since prisoners have no "constitutional entitlement to a specific prison grievance procedure") (citing *Ramirez*, 334 F.3d at 860) (quotation marks omitted).  Having no right to file a grievance, a three-month limitation on the number of grievances that Pitts was allowed to file cannot, by itself, state a due process claim.

Third, Pitts asserts that he submitted "numerous complaints, letters, and grievances . . . from May 2016 to December 2016 on every issue named in [the] complaint."  FAC, ECF No. 12, at PageID #72.  Thus, any restriction on his grievances did not result in any harm to Pitts.

Finally, while prisoners must exhaust administrative remedies before filing suit, 42 U.S.C. § 1997e(a), a prison's lack of a grievance system or a prison official's refusal to process an inmate's grievances will excuse the inmate's failure to exhaust administrative remedies.  *See Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (prisoner's failure to exhaust administrative remedies is excused when prisoner takes reasonable, appropriate steps to exhaust but is precluded from

exhausting through no fault of his own). Again, Pitts cannot show harm.

Pitts alleges no facts supporting an actual injury to his access to the court based on the three-month limitation on the number of grievances that he was allowed to file daily. His speculation that claims he was unable to exhaust would later be dismissed fails to state a colorable legal theory or claim and is DISMISSED with prejudice because amendment is futile.

### b. *Refusal to Copy Letter*

Pitts' claim that Gunn refused to copy a letter for him on June 21, 2016, was not alleged in the original Complaint and has no apparent connection to his claims of overcrowding at OCCC, beyond Pitts' assertion that the letter was intended to alert OCCC and DPS officials about overcrowding. As such, it does not comply with Fed. R. Civ. P. 18 or 20.

Pitts also fails to explain how Gunn's refusal to copy one letter in June 2016 impeded his ability to access the courts or caused him injury. To the contrary, Pitts states that Gunn distributed the letter to the "OCCC Administration," which was his stated goal in writing the letter. FAC, ECF No. PageID #75. He also says that he submitted numerous letters, complaints, and grievances to OCCC Administration regarding his claims, which obviates any claim of an actual injury his access to the courts. This claim is DISMISSED for failure to state a claim,

with prejudice because amendment is futile.

### c.    *Limitation on Attorney Contact*

Pitts reasserts his allegation that Barayuga limited his ability to contact his state-court defense attorneys for "[m]aybe" fifteen to twenty days per month while OCCC was on lockdowns," which he alleges made it "almost impossible to talk or consult with his attorneys." *Id.*, at PageID #76. Pitts alleges this denied him unlimited access to his attorneys, which in turn, denied him access to the courts during his direct appeal in Cr. No. 09-1-00097. He suggests that the state trial judge's denial of his motion for a new trial and re-imposition of a life term with parole shows his actual injury. Pitts further speculates that this limitation *may* have prevented his attorneys from pursuing his request that they move for recusal of the trial judge. He posits that, if they filed a motion for recusal, and if it was granted, a new judge *may* have granted him a new trial (or imposed a lesser sentence).

The Hawaii Supreme Court remanded Cr. No. 09-1-00097 on February 24, 2014, for the circuit court to appoint Pitts counsel on resentencing and for post-verdict motions. *See State v. Pitts*, 131 Haw. 537, 319 P.3d 456 (2014). Although Pitts represented himself during trial (with standby counsel), he has been represented by counsel at all times since remand.

First, Pitts does not explain how being on lockdown prevented him from writing to his attorneys, or from contacts and visits with them before he arrived at OCCC or during the remaining ten to fifteen days per month when OCCC was *not* on lockdown.

Second, two days before Pitts' November 9, 2016 hearing on his motion for a new trial and re-sentencing in Cr. No. 09-1-00097, Pitts' attorney sought a continuance to file a motion seeking the trial judge's recusal. *See* https://jimspss1.courts.state.hi.us. (1PC091000097). At the November 9, 2016 hearing, the court questioned why the motion for recusal contained Pitts' *unexecuted* declaration in support. Pitts' attorney explained that he had sought a continuance to prepare the motion for recusal, but Pitts refused to execute a declaration in support of the motion. The trial judge therefore denied the motion for recusal and for further continuance, resentenced Pitts, and denied the motion for a new trial. Pitts was not prevented from moving to recuse the trial judge because of lockdowns at OCCC.

Third, Pitts alleges that "it took him and his new counsel two years to appeal," suggesting that this "delay" was due to the limitation of contact with his attorneys during lockdowns at OCCC. This is not only inaccurate, there is no connection between lockdowns at OCCC and Pitts' ongoing direct appeal in Cr.

No. 09-1-00097. After Pitts was re-sentenced on November 9, 2016, his trial

counsel filed a timely notice of appeal on November 23, 2016. Pitts was

transferred back to HCF within the month. Any delays in Pitts's appeal since then

is clearly unrelated to lockdowns at OCCC.

Fourth, Pitts' right of access to the courts for his criminal proceedings was

guaranteed by the State's appointment of attorney on remand. The Ninth Circuit

and other courts have uniformly held that the right of access to the courts cannot

be violated when an inmate is offered the assistance of court-appointed counsel.

*See United States v. Wilson*, 690 F.2d 1267, 1271-72 (9th Cir. 1982) ("The offer of

court-appointed counsel to represent [Defendant] satisfied the Fifth Amendment

obligation to provide meaningful access to the courts."); *Terwilleger v.*

*Washington*, 2018 WL 6331621, at *4 (W.D. Wash. Oct. 30, 2018), *report and*

*recommendation adopted*, 2018 WL 6329307 (W.D. Wash. Dec. 3, 2018);

*Appolon v. Napier*, 2017 WL 6820172, at *5 (D. Ariz. Oct. 26, 2017). While the

complete denial of the ability to consult with appointed counsel might negate that

protection, that is not what Pitts alleges nor what is apparent from the record.

Moreover, to recover damages for an allegedly unconstitutional conviction

or imprisonment, or for other harm caused by actions whose unlawfulness would

render a conviction or sentence invalid, a plaintiff must prove that the conviction

or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994). A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Id.* at 487. Pitts' conviction in Cr. No. 09-1-00097 is on direct appeal, however, and has clearly not been reversed, expunged, or invalidated. Thus, Pitts' claim that he was prevented from successfully challenging his sentence and motion for a new trial by a short limitation of contact with his defense attorneys, is premature, and if successful, would necessarily imply that his conviction is not valid. This claim is barred by *Heck*.

Pitts fails to state a colorable claim that he was denied access to the courts by Barayuga's alleged limitation on attorney visits and telephone calls during lockdowns at OCCC. This claim is DISMISSED without prejudice, but without leave to amend in this action.

C. **Remaining Claims: Overcrowding and Retaliation**

Pitts broadly alleges that Defendants Ige, Espinda, Maesaka-Hirata, Hoffman, Sequeira, Ross, Watanabe, Johnston, Officer Evans, Food Service Administrator, and Does 1-10 acted with deliberate indifference to his health and

safety when they housed him in unconstitutionally overcrowded conditions at OCCC. He also alleges that certain Defendants retaliated against him for filing grievances and complaining about the allegedly overcrowded conditions at OCCC. In addition to the deficiencies noted above concerning the disjointed and confusing organization of the FAC, the court provides the following guidance so that Pitts can effectively cure his claims and file an amended pleading.

### 1.    *Timing*

Pitts asserts that, because he was unsentenced "at all relevant times concerning this complaint," his claims regarding overcrowding, at least, arise under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. FAC, ECF No. 12, PageID #66 and #70. *If* Pitts was an unsentenced inmate during all relevant times alleged here, he is correct.[8] *See Bell v. Wolfish*, 441 U.S. 520, 534-35 (1979) (holding the Fourteenth Amendment applies to unconvicted prisoners' claims challenging the conditions of confinement); *United States v. Haymond*, 139 S. Ct. 2369, 2379 (2019) (explaining that "a 'criminal prosecution' continues and the defendant remains an

---

[8] The Fourteenth Amendment's "standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2004).

'accused' . . . until a final sentence is imposed") (quotation and citation omitted).

Pitts, however, was re-sentenced in Cr. No. 09-1-00097 on November 9, 2016, and became a "convicted" inmate on that date. Pitts' emphatic assertion that he was an unsentenced inmate at all relevant times therefore compels the conclusion that either: (1) he was transferred from OCCC on or shortly after he was convicted, and was no longer subject to the conditions challenged here in December 2016; or (2) that he asserts no constitutional violations occurred after November 9, 2016.

Documents filed in Civ. No. 15-00483 and Civ. No. 17-00137 indicate that Pitts was re-incarcerated at HCF in *November* 2016.[9] If Pitts elects to file an amended pleading, he must provide the dates that he transferred to and from OCCC, which will at least narrow the relevant time frame for his overcrowding and retaliation claims and allow Defendants to file an informed response.[10] It will also enable the court to accurately determine whether the Eighth or the Fourteenth Amendment legal standard applies to his deliberate indifference claims.

_____

[9] *See supra*, n.6, referring to Pitts' motion in Civ. No. 15-00483, ECF No. 71 (stating he was re-housed at HCF "on November 7 or 14th, 2016"); *see also* Civ. No. 17-00137, ECF No. 171-3 (Pitts' grievance numbers 275539, 275540, 275543, dated November 23, 26, 29, 2016, showing Pitts' was housed in "HCF Mod 2 B4" and "Mod 2 Cell 5" when filed).

[10] This should pose no hardship, as Pitts has had more than two years to discover the dates pertaining to his claims.

## 2.     *Fourteenth Amendment: Deliberate Indifference*

Assuming Pitts' deliberate indifference claims arise under the Fourteenth Amendment, they are governed by a wholly objective standard.  *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (applying objective standard to medical care claims) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015), and *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc)).[11]  Pitts must demonstrate that Defendants' acts or omissions were objectively unreasonable, and identify objective facts indicating that the "challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that [objective]." *Kingsley*, 135 S. Ct. at 2473-74 (discussing excessive force claims).

Pitts must show that: (1) a particular defendant made an intentional decision with respect to the conditions under which he was confined; (2) those conditions put him at substantial risk of suffering serious harm; (3) that defendant did not take reasonable available measures to abate that risk, even though a reasonable

---

[11]  The Ninth Circuit has not expressly extended the objective deliberate indifference standard to *all* unconvicted detainee conditions of confinement claims, beyond denial of medical care, failure-to-protect, and excessive force claims, although *Gordon* strongly suggests that it will. *See Gordon*, 888 F.3d at 1120, 1124, and n.2 (citing *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (extending objective deliberate indifference standard to all pretrial detainee conditions of confinement claims)); *Eckard v. Rizk*, 2019 WL 2931658, at *1 (W.D. Wash. June 10, 2019), *report and recommendation adopted*, 2019 WL 2918223 (W.D. Wash. July 8, 2019).

officer in similar circumstances would have appreciated the high degree of risk –
making the consequences of the defendant's conduct obvious; and (4) by not
taking such measures, the defendant caused Pitts' injuries. *Id.*

"With respect to the third element, the defendant's conduct must be
objectively unreasonable, a test that will "necessarily turn on the facts and
circumstances of each particular case." *Castro*, 833 F.3d at 1071 (citing *Kingsley*,
135 S. Ct. at 2473). This requires "more than negligence but less than subjective
intent – something akin to reckless disregard[,]" because "mere lack of due care by
a state official does not deprive an individual of life, liberty, or property under the
Fourteenth Amendment." *Castro*, 833 F.3d at 1070-71.

Temporarily housing an inmate in a cell with more inmates than the cell was
intended to hold, by itself does not rise to the level of a constitutional violation.
*Rhodes v. Chapman*, 452 U.S. 337, 348-49 (1981) (holding double-celling by
itself does not violate the Eighth Amendment). There is no "one man, one cell
principle lurking in the Due Process Clause." *Bell*, 441 U.S. at 542 (quotation
marks omitted). Thus, overcrowding has "no constitutional significance standing
alone." *Balla v. Idaho State Bd. of Corrs.*, 869 F.2d 461, 471 (9th Cir. 1989);
*Doty v. Cty. of Lassen*, 37 F.3d 540, 545 n.1 (9th Cir. 1994); *Hoptowit v. Ray*, 682
F.2d 1237, 1249 (9th Cir. 1982).

To state a colorable overcrowding claim, an inmate must plausibly allege that the crowding caused an increase in violence, reduced the provision of other constitutionally required services, or reached a level that rendered the institution unfit for human habitation. *See id.*; *Hoptowit*, 682 F.2d at 1248-49 (noting that overcrowding by itself does not violate the Constitution, but can lead to specific effects that might do so), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

Pitts may not allege claims on behalf of other inmates and the Court confines its review to incidents in which Pitts alleges that he was personally involved. Pitts claims that: his Special Housing Unit ("SHU") cell had only 2' x 2' of "unencumbered space," that is, floor space minus the bunk, toilet, and sink area; rats crawled through holes in the wall; and there was no electricity or lights. *See* FAC, ECF No. 12, at PageID #70.

Pitts further states that: he was housed with two other inmates in the general population "module;" hundreds of roaches bred in a desk in the cell and bit him while he slept; there was no air conditioning in the summer, which exacerbated his asthma and an undisclosed "chronic" condition, *id.* at PageID #71; there was no hot water for one month; he was "denied exercise an[d] recreation [for] weeks/months," *id.* at PageID #80; because "prisoners [were] forced to sleep on

floor inches from the toilet," he "gave his bunk on one occasion to [a] mentally ill prisoner;" *id.* at PageID #70; and he was denied showers.

If Pitts is able to link specific Defendants actions and inactions to these claims, that is, show how each Defendant is personally involved in these allegations, these claims shall likely proceed.

### 3.    *Stand-alone Deliberate Indifference Claims*

Pitts also alleges incidents that do not appear to be caused by overcrowding, but nonetheless state stand-alone claims.  For example, Pitts alleges that he was "attacked [by two other prisoners] on orders of a correction worker," in retaliation for having his having filed grievances.  *Id.*, at PageID #80.  Although this incident does not apparently stem from overcrowding, it otherwise states a colorable claim, if Pitts provides sufficient information to identify the "correction worker," sets forth the date it occurred, and explains what actions were taken by prison officials thereafter.

Similarly, Pitts alleges that the Food Service Administrator and kitchen staff provided inmates only 1200 calories of unappetizing food per day, causing him to lose a substantial amount of weight.  But Pitts alleges that these Defendants were keeping the food that was intended for inmates for themselves and other prison staff, and were falsifying prison records to make it appear that inmates were

receiving the food.  *See id.*, at PageID #74.  Again, while this allegation clearly states a stand-alone claim, it does not stem from overcrowding.

### 4.     *Retaliation*

Prison officials may not retaliate against prisoners for filing grievances and initiating litigation.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Silva v. DiVittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011) (prisoners retain First Amendment rights not inconsistent with their prisoner status or penological objectives, including the right to file inmate appeals and the right to pursue civil rights litigation).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes*, 408 F.3d at 567-68.  At the pleading stage, the "chilling" requirement is met if the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'"  *Id.* at 568 (quoting *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).  Direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a

chilling effect on the further exercise of a prisoner's First Amendment rights. *Rhodes*, at 568 n.11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 568, n.11).

Pitts alleges that the kitchen supervisor and staff retaliated against him for complaining about moldy food trays, by providing food on paper plates for one to two weeks. He alleges the paper plates held significantly less food than the food trays, which caused other prisoners to resent him. He also alleges that an unidentified prison guard incited and allowed two unidentified inmates to assault him, in retaliation for filing grievances. These claims sufficiently allege retaliation, although Pitts must provide the dates when these incidents allegedly occurred.

## D.    Supervisor Liability

The FAC fails to provide sufficient details to personally link Ige, Espinda, Maesaka-Hirata, Johnston, Hoffman, Sequeira, Ross, and Evans, who are apparently supervisors, to any specific, individual actions or inactions that violated his rights. Pitts also continues to hold Ige, Espinda, and Maesaka-Hirata at least liable based solely on their positions within the DPS or State government. He

alleges they knew or should have known about overcrowding at OCCC, because they made statements seeking additional funding for construction of a new prison, and because problems within Hawaii's prisons have been reported in the press. Pitts also alleges that he wrote to some or all of them to complain about alleged overcrowding at OCCC.

"A supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ). "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal quotation marks and citations omitted) (alterations in original). Thus, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous

indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

Pitts must show that these supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Pitts points to the DPS policy of housing pretrial and unsentenced inmates at OCCC, when the facility is already allegedly overcrowded, as the moving force for these supervisory Defendants' liability.

Pitts again fails to allege competent, plausible facts showing that Ige, Espinda, Maesaka-Hirata, acting Wardens Hoffman or Sequeira, Johnston, Ross, or Evans were directly involved in, had knowledge of, or acquiesced in the constitutional deprivations that he alleges. Rather, Pitts' suggests that the policy of housing pretrial and presentenced inmates at OCCC was, in itself, constitutionally deficient. It is not. Pitts fails to show any other DPS policy or official custom that authorizes the deprivation of his personal, constitutional rights. These officials may be aware that OCCC is housing more inmates than it

was intended, but that does not equate to their knowledge of and acquiescence in unconstitutional overcrowding or the other deprivations Pitts alleges.

## IV.  <u>LEAVE TO AMEND</u>

The First Amended Complaint is DISMISSED for the reasons stated above. Pitts may file an amended complaint on or before August 21, 2019, that cures the deficiencies in those claims dismissed herein without prejudice.  Pitts is again notified that he may not expand his claims beyond those already alleged or add new claims or Defendants without an explanation regarding how those new claims or Defendants relate to the claims that he alleged in the *original* Complaint.

If Pitts elects to file an amended complaint, he must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.3, which requires an amended complaint to be complete in itself without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and MUST BE submitted on the court's prisoner civil rights form.  An amended complaint will supersede the preceding complaint.  *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10.  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012).

If Pitts fails to timely file an amended complaint, or is unable to cure the deficiencies in his claims, this action may be dismissed and counted as a "strike" under 28 U.S.C. § 1915(g) without further notice.[12]

## V.  CONCLUSION

(1) The First Amended Complaint is DISMISSED with leave granted to amend as limited above.

(2) Pitts may file an amended pleading that cures the deficiencies in those claims dismissed with leave to amend on or before August 21, 2019.  The Clerk is DIRECTED to send Pitts a prisoner civil rights complaint form so that he may comply with this Order if he elects to file an amended pleading.

(3) If Pitts fails to timely amend his pleadings, or fails to cure the deficiencies in those claims dismissed herein with leave to amend, this suit may be AUTOMATICALLY DISMISSED without further notice and he may incur a

---

[12] 28 U.S.C. § 1915 (g) states:

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

strike under 28 U.S.C. § 1915(g).

      IT IS SO ORDERED.

      DATED:     HONOLULU, HAWAII, July 22, 2019.



                                  /s/ Leslie E. Kobayashi

                                  Leslie E. Kobayashi

                                  United States District Judge

*Pitts v. Ige, et al.*, No. 1:18 cv 00470 LEK RT; Scrng '19 Pitts 18 470 lek (dsm FAC overcrdg R18 acc. ct. retal.)